IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH D. MORRISSEY, )
 )
      Plaintiff, )
 )
v. ) Civil Action No. 3:19cv747–HEH
 )
WTVR, LLC d/b/a CBS 6, )
MARK HOLMBERG, )
and JOHN DOES 1–10 )
[WTVR Editors and Publishers], )
 )
      Defendants. )

## MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss)

Plaintiff, Joseph D. Morrissey ("Morrissey"), is a well-known public figure in the Richmond, Virginia area.[1] In fact, the immediate lawsuit is the result of hyperbolic and arguably deprecating commentary by a Richmond television station during his candidacy for Mayor of the City of Richmond. Morrissey contends that the comments by WTVR, LLC ("CBS 6") reporter, Mark Holmberg ("Holmberg"), were false, defamatory, and insulting. He describes Holmberg's remarks as imputing his unfitness to serve as mayor and portraying him as a "stupid liar, who was a sex crazed maniac."

---

[1] A public figure is someone who has assumed a role of "special prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). Morrissey previously served as the elected Commonwealth's Attorney for the City of Richmond, Virginia and is a former member of the Virginia General Assembly.

(Compl. ¶ 12, ECF No. 1-2.) Morrissey seeks $1,350,000 in damages.[2] Defendant CBS 6 ("CBS 6") responds that the comments at issue were either the broadcaster's personal opinion of a public figure, which is "entitled to the broadest protection the First Amendment can afford," or factually true. *Mahan v. Nat'l Conservative Political Action Comm.*, 315 S.E.2d 829, 833 (Va. 1984).

The case is presently before the Court on CBS 6's Motion to Dismiss[3] pursuant to Federal Rule Civil Procedure 12(b)(6). ("Motion," ECF No. 3.) Rule 12(b)(6) requires the complaint to plead a plausible claim for relief. Because this Court's jurisdiction is based on diversity of citizenship, the substantive law of Virginia governs. *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir. 1996). Both parties have filed memoranda supporting their respective positions, and the Court heard oral argument on December 19, 2019.

The setting of this lawsuit is a commentary aired on September 2, 2016 by a CBS 6 reporter entitled "Richmond's Mayor Morrissey?" According to the Complaint, the commentary was republished online in an article with the headline "Holmberg: OMG: Sextin' Joe Morrissey is leading the mayor's race!" (Compl. ¶ 9.) Morrissey contends that during the broadcast, Holmberg falsely stated, "During the past couple of years, Richmond has made national news and international news as a cool place to live,

---

[2] Morrissey seeks $1,350,000 for damages to his reputation. However, two years after Holmberg's commentary aired, Morrissey was elected to the Senate of Virginia by wide margin, defeating the incumbent office holder.

[3] The Complaint also names as Defendants Mark Holmberg and John Does 1–10 [WTVR Editors and Publishers], none of whom have been served.

2

to visit, to play and party. Now we're making national news because of *this fool?*" (*Id.* ¶ 12 (emphasis in original).) Morrissey characterizes this allegedly false statement as "the product of spite, ill-will, and an overt desire to discredit and destroy Joe's reputation for being extremely intelligent." (*Id.*)

The next comment at issue concerns Morrissey's son. The Complaint alleges that

> Holmberg intentionally spliced together Joe's comments regarding his son, Chase, and Holmberg's statement that Joe was "lying", to make it appear that Joe was "lying" about being Chase's father. During the interview, Joe stated, "do you think for a moment if that child [Chase] is mine, I would run from that? Not—not going to happen."

(*Id.* ¶ 13.) At this point, after airing a clip of the prior interview, Morrissey alleges that Holmberg stated, "He was lying to me then. He's lied to the investigators and everybody else in this case. That's why the state bar is coming after him, again." (*Id.*) Morrissey maintains that this portion of the presentation was an intentionally spliced clip of the interview and that his "accusation that Joe lied is malicious, spiteful, the product of ill-will, and is an overt attempt to discredit and destroy Joe's reputation for honesty and integrity." (*Id.* ¶ 14.) Morrissey added in his Complaint that "at the time of the on air 'interview', there was no evidence that the Virginia State Bar was 'coming after Morrissey again.'" (*Id.*)

Morrissey next contends that Holmberg's statement that Morrissey "famously and stupidly published a planation style 'Gone with the Wind' photo of himself and his wife" was defamatory. (*Id.* ¶ 15 (internal quotation marks omitted).) Morrissey alleges

3

that Holmberg's statements "evince a clear hatred of [him] with clear racial implications." (*Id.*)

Finally, Morrissey draws the Court's attention to Holmberg's concluding comment: "Do we really want to elect this clown, this nonstop, one ring circus, this liar? Or do we want to elect somebody that's gonna lift us up to the heights that Richmond so richly deserves?" (*Id.* ¶ 16.) Morrissey contends that "[t]hese false accusations impute to Joe dishonesty, a lack of intelligence, lack of character, lack of sincerity and resolution to perform the duties of Mayor and imply that Joe is unfit to be Mayor of the City of Richmond." (*Id.*)

Morrissey's legal arguments are largely premised on his contention that Holmberg's broadcast was an interview as opposed to mere commentary. Close examination of the video belies this argument. Most conspicuously, there is an orange footer labeling the entire presentation "Mark's commentary." (Compl. Ex. B, ECF No. 1-3.)[4] There is also a white footer stating "Mark: That just cannot happen." (*Id.*) Each of the segments in which Holmberg is questioning or conversing with Morrissey are date stamped as occurring in 2013 and 2014, while the commentary at issue was broadcasted on September 2, 2016. Furthermore, the news anchor introducing the piece said, "[F]or our Mark Holmberg, electing Morrissey would be a setback for a city getting attention lately for all the right reasons. Here's Mark's report and commentary." (*Id.* at 28.) Holmberg's broadcast concluded with the comment, "That's

---

[4] The interview was republished online at https://wtvr.com/2016/09/02/holmberg-omg-sextin-joe-morrissey-is-leading-the-mayors-race/.

my take. Love to hear yours on WTVR.com." (*Id.* at 30.) Holmberg's broadcast had none of the attributes of an interview, just his personal opinion.

The context of Holmberg's comments is critical to the ensuing analysis because of the heightened First Amendment protection afforded the media reporting on public figures vying for public office. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091–92 (4th Cir. 1993). "[T]he First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern." *Id.* (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)). As the U.S. Supreme Court has noted, public figures voluntarily expose themselves to the "risk of injury from defamatory falsehood." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974).

"As an accommodation to the First Amendment's protections of free speech and press, the Supreme Court has held that 'public officials' and 'public figures' must prove, as part of a defamation case, that the defendant's allegedly defamatory statement was made with 'actual malice,' meaning that it was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2014) (internal citations omitted). Reckless disregard requires proof the speaker "in fact entertained serious doubts as to the truth of his publication." *Gertz*, 418 U.S. at 334 n.6 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)); *see also Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012).

Mere proof or allegations that the defendant failed to adequately investigate or check the accuracy of a false statement is insufficient to support a claim of defamation under this standard. *Gertz*, 418 U.S. at 334–37, 342–43. To prevail, a plaintiff must demonstrate "subjective awareness of probable falsity" of the publication. *Id.* at 334 n.6 (citing *St. Amant*, 390 U.S. at 731).

Defamation jurisprudence is well established in the Commonwealth of Virginia. A viable claim requires proof of publication of an actionable statement with the requisite sting. *Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015). "To be actionable, the statement must be both false and defamatory." *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013). CBS 6 contends that Holmberg's comments are neither. It maintains that even if Holmberg's commentary is found to be "insulting, offensive, or otherwise inappropriate," it constitutes "no more than rhetorical hyperbole" and is not actionable. *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (Va. 1998) (internal citations omitted).

Morrissey maintains that the determination of whether a statement is defamatory—either directly or by implication—is an issue for the ultimate trier of fact. This argument, however, is contrary to an established well of countervailing authority. As the United States Court of Appeals for the Fourth Circuit made clear in *Virginia Citizens Defense League v. Couric*, the task of determining whether the statement at issue is reasonably capable of defamatory meaning is a "threshold matter of law" for the trial court. 910 F.3d 780, 784 (4th Cir. 2018) (citing *Schaecher*, 772 S.E.2d at 595).

In Count One of his Complaint, Morrissey contends that the above described comments by Holmberg constitute defamation *per se*, and in Count Two, he

characterizes them as insulting words. Virginia's common law of libel and defamation govern this diversity case.[5]

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015). The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Id.* at 555, 570 (citation omitted).

To survive Rule 12(b)(6) scrutiny, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*,

---

[5] "Virginia makes no distinction between actions for libel and slander." *Schaecher*, 772 S.E.2d at 594.

588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Although this Court believes that Holmberg's broadcast in its entirety is political commentary protected by the First Amendment, Morrissey's claims also fail to survive Rule 12(b)(6) review on other grounds.

CBS 6's Motion to Dismiss is alternatively based on its contention that most of its reporter's comments at issue are factually correct. Typically, extrinsic evidence should not be considered in ruling on a Rule 12(b)(6) motion. However, if such external evidence "was integral to and explicitly relied on in the complaint, and [if] the plaintiffs do not challenge its authenticity," it may be relied upon in reviewing the sufficiency of the complaint." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Furthermore, in deciding a motion to dismiss under Rule 12(b)(6), a court is not precluded from taking notice of items in the public record. *Hall v. Va.*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

Particularly pertinent here is an opinion issued by the Supreme Court of Virginia in 2019 affirming a lower court's revocation of Morrissey's license to practice law, which appears to confirm a factual basis for much of Holmberg's commentary. *Morrissey v. Virginia State Bar*, 829 S.E.2d 738 (Va. 2019). The Supreme Court of

8

Virginia's opinion supported allegations that Morrissey had been convicted of contributing to the delinquency of a minor by engaging in a sexual relationship with a juvenile female and made false statements concerning their relationship. *Id.* at 745–46. The court also noted Morrissey's "long and notorious book" of disciplinary history with the State Bar. *Id.* at 746.

This Court's alternative analysis begins by identifying comments that trip at the analytical starting gate because they are pejorative, as opposed to factual, or they lack requisite defamatory sting. To surmount the first hurdle, an actionable statement must be both false and defamatory. *Tharpe*, 737 S.E.2d at 892. Furthermore, it must have the requisite defamatory sting to one's reputation. *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 866 (2014). Typically, defamatory language that "tends to injure one's reputation in the common estimation of mankind . . . or tends to hold him up to scorn, ridicule or contempt . . . connotes the requisite 'defamatory sting.' The term imports more than language that is 'insulting, offensive, or otherwise inappropriate.'" *Yeagle*, 497 S.E.2d at 137 (citing *Adams v. Lawson*, 58 Va. 250, 250 (17 Gratt. 1867)).

Even if Holmberg's comments were found to contain the requisite defamatory sting, they must also have "a provably false factual connotation and thus [be] capable of being proven true or false." *Cashion v. Smith*, 749 S.E.2d 526, 531 (Va. 2013) (internal citations omitted). "[T]he verifiability of the statement in question [is] a minimum threshold issue." *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (4th Cir. 1987). "When a statement is relative in nature and depends largely

9

on a speaker's viewpoint, that statement is an expression of opinion." *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009).

Aside from being nonfactual, much of the commentary at issue is tame in light of the tenor of contemporary political debate. This is particularly true of such amorphous terms as "fool," "famously and stupidly,"[6] "this clown, this nonstop, one ring circus, this liar." (Compl. ¶ 16.) While such language may be insulting and derogatory, it does not have the requisite defamatory sting. When public figures enter the political arena, they have voluntarily exposed themselves to increased risks from defamatory falsehood concerning them. *Gertz*, 418 U.S. at 345.

Turning next to Morrissey's publication of what Holmberg characterized as a "plantation style 'Gone with the Wind' photo of himself and his wife." (Compl. ¶ 15.) Morrissey alleges that "[i]n fact, Joe's wife is African-American. Again, Holmberg's statements evince a clear hatred of Joe with clear racial implications." (*Id.*) Morrissey denies publishing a "plantation style photo" to anyone. (*Id.*)

Morrissey contends that Holmberg's characterization, coupled with his display of the photo, portrayed a defamatory implication of racism. However, the apparent import of Holmberg's display of the photo was to demonstrate his view of Morrissey's judgment. As with any political commentary, a reader could draw a defamatory inference if they were so inclined, but nothing said by Holmberg necessarily kindled a suggestion of racism. Defamatory implication is not analogous to psychoanalytical free

---

[6] Morrissey denies the characterization that he is stupid and describes himself as having a reputation as an extremely brilliant criminal defense lawyer. (Compl. ¶ 12.)

10

association in which a therapist asks a person to freely share anything that comes to mind—i.e., what does this image remind you of? To state a plausible claim, the defamatory implication must be firmly moored to the allegedly defamatory language or image. "[A]llegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *Va. Citizens Def. League*, 910 F.3d at 784 (quoting *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591–92 (Va. 1954)); *see also Schaecher*, 772 S.E.2d at 595. The words accompanying Holmberg's display of the photograph neither support a reasonable implication of racist overtone, as Morrissey contends, nor an actionable claim of defamation.

Lastly, Morrissey alleges that Holmberg's characterization of the Virginia State Bar's investigation of his conduct is false and defamatory. According to the Complaint, Holmberg said the following: "He was lying to me then. He's lied to the investigators and everybody else in this case. That's why the state bar is coming after him, again." (Compl. ¶ 13.) This comment by Holmberg was the subject of considerable debate during oral argument. Morrissey, through counsel, contends that either directly or by implication the comment accuses him of what could be construed to be a criminal offense. However, a careful reading of the Supreme Court of Virginia's opinion in *Morrissey v. Virginia State Bar* provides some factual basis for Holmberg's comments. The deception noted by Holmberg appears to evolve from Morrissey's conviction for contributing to the delinquency of a minor. The Court's opinion states that

> Morrissey testified that he was not aware of [the young lady's] actual age. At the hearing, he pointed to, among other things, the fact that she listed an incorrect birthdate on her job application. . . . The Bar produced ample evidence that Morrissey actually knew [the young lady] was a minor. . . . The bar points out that Morrissey, in fact, knew [the young lady's] true age, [she] was an employee subject to his supervision, Morrissey engaged in sexual relations with her in his law office, and then he bragged about it. The Bar argues that Morrissey should have been "guiding associates and law firm staff in in the ethical practice of law. Instead, his misconduct shows a lack of judgment and clear disregard for the rule of law."

*Morrissey*, 829 S.E.2d at 745.

The Court further noted that

> In January 2015, after the entry of Morrissey's *Alford* plea, a special prosecutor brought additional charges of felony uttering a forged public record, felony conspiracy to utter a forged record, felony inducing perjury, and perjury. The Bar referred to these charges as "Morrissey II." The charges stemmed from the allegation that Morrissey had employed a forged court order during the hearing on Morrissey's *Alford* plea. The circuit court dismissed the indictments in Morrissey II on the basis that the immunity provision of Morrissey's plea agreement foreclosed this additional prosecution . . . .

*Id.* at 742 n.1 (citing *Commonwealth v. Morrissey*, Record No. 0559-15-2, 2015 WL 5554227 (Va. Ct. App. Sept. 22, 2015)).

With respect to Holmberg's statement, "[t]hat's why the state bar is coming after him, again," the Supreme Court of Virginia's opinion in *Morrissey v. Virginia State Bar* shows a reasonable factual basis for Holmberg's opinion. *Id.* at 744. In 2015, following the dismissal of the charges pending against Morrissey in the Henrico County Circuit Court, "the Virginia State Bar began its investigation and issued subpoenas *duces tecum* to four of [Morrissey's] criminal defense attorneys." *Id.* at 742. "On March 24, 2016, at

a hearing before the Henrico County Circuit Court, [Morrissey] agreed to turn over his attorneys' files to the VSB, omitting nothing." *Id.*

Clearly, a reporter with access to public records could reasonably conclude that Morrissey was under investigation by the Virginia State Bar at the time of the commentary at issue—and that the investigation included making false statements in connection with the accusations against him. As the Supreme Court of Virginia concluded in *Jackson v. Hartig*, "in the context of the actual malice inquiry, a duty to investigate the accuracy of one's statements does not arise until the publisher of those statements has a high degree of subjective awareness of their probable falsity." 645 S.E.2d 303, 309 (Va. 2007); *see also Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

In the final analysis, this Court concludes that Holmberg's broadcast is clearly presented to CBS 6 viewers as political commentary. Consequently, it is entitled to broad First Amendment protection warranting dismissal. The content also appears to have a defensible factual basis. Accordingly, CBS 6's Motion to Dismiss will be granted and the Complaint will be dismissed with prejudice as to CBS 6.

With respect to the remaining named Defendants, Morrissey has not complied with Fed. R. Civ. P. 4(m) requiring service to be made within ninety (90) days of filing his Complaint. Therefore, the Complaint will be dismissed without prejudice as to the remaining Defendants.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Jan. 9, 2020
Richmond, VA